UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BETTY J. RIVERA,<br>        Plaintiff,<br>v.<br>NANCY A. BERRYHILL,<br>        Defendant. | Case No.16-cv-06927-SVK<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 22, 27 |

Plaintiff Betty Rivera appeals a final decision of the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff presents two issues for review: 1) Plaintiff asserts that the Administrative Law Judge's ("ALJ") determination was erroneous because the ALJ did not accurately describe all of the Plaintiff's impairments and limitations; and 2) Plaintiff asserts the ALJ erred in analyzing Plaintiff's credibility. Before the Court are the parties' cross-motions for summary judgment. ECF 22, 27. Having considered the motions, the relevant law, and the record in this case, the Court finds that the ALJ applied the proper legal standards and that his determinations are supported by substantial evidence. The Court therefore denies Plaintiff's motion for summary judgment and grants Defendant's motion for summary judgment.

**RELEVANT FACTS**

Plaintiff applied for disability benefits on August 15, 2013, alleging disability beginning on August 1, 2011, due to seizures, post-traumatic stress disorder, stroke, type 2 diabetes, high blood pressure, and fibromyalgia. AR 102-103, 117-18, 213. After her claim was denied both initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. The ALJ held a hearing on April 27, 2015. AR 64. On June 18, 2015, the ALJ issued a finding that Plaintiff has

severe impairments, including: pseudo-seizures, post-stroke, hypertension, obesity, and major depressive disorder/post-traumatic stress disorder. AR 25. The ALJ further found that Plaintiff is not disabled. AR 35. The Appeals Council denied Plaintiff's request for review of the ALJ's determination. AR 1.

Following the decision of the Appeals Council, Plaintiff filed a timely civil action in this Court. *See* ECF 1. All parties have consented to the jurisdiction of a magistrate judge. ECF 12, 14.

## I. LEGAL STANDARDS

### a. Standard of Review

This Court has the authority to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *see also* 42 U.S.C. § 405(g). Federal Courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Brown-Hunter*, 806 F.3d at 492 (internal quotation marks and citation omitted).

The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based on the application of improper legal standards. *Id*. at 492. "Substantial evidence" means more than a mere scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) (internal quotation marks and citations omitted). The Court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id*. (internal quotation marks and citation omitted). Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's findings if supported by inferences reasonably drawn from the record. *Id*.

Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is harmless. *Brown-Hunter*, 806 F.3d at 492. But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless.

2

*Brown-Hunter*, 806 F.3d at 492. The Court is "constrained to review the reasons the ALJ asserts." *Id*. (internal quotation marks and citation omitted).

### b. Standard for Eligibility for Disability Benefits

Disability benefits are available under Title II of the Social Security Act when an eligible claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the ALJ is required to employ a five-step sequential analysis, determining: (1) whether the claimant is doing substantial and gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity (i.e., what a claimant can still do despite her limitations), the claimant can still do her past relevant work; and (5) whether the claimant can make an adjustment to other work. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 and n.5 (9th Cir. 2014). The burden of proof is on the claimant at steps 1 through 4, but shifts to the Commissioner at step 5. *Bray v. Commissioner of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

## II. DISCUSSION

The ALJ employed the established five-step framework for evaluation of disability claims and found as follows:

- **Step 1**: The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. At Step 1 the ALJ noted that the Plaintiff had engaged in some work activity which did not rise to the level of substantial gainful activity but did show significant vocational ability to do tasks. AR 25.
- **Step 2**: The ALJ concluded that Plaintiff had pseudo-seizures, post-stroke, hypertension, and major depressive disorder/post-traumatic stress disorder (PTSD) that qualified as severe impairments under 20 CF 404.1520(c). *Id*.

- **Step 3**: The ALJ found that Plaintiff did not have an impairment of combination of impairments that met or medically equaled the severity of one of the listed impairments 20 CFR Part 405, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526). AR 27.
- **Step 4**: The ALJ determined that Plaintiff has the residual functional capacity "to perform medium work as defined in 20 CF 404.1567(c) except she is limited to unskilled work, with seizure precautions, and no more than frequent fingering with the left [sic] and no more than frequent foot control with the left foot." AR 29. The ALJ determined that Plaintiff is unable to perform her past relevant work as a medical record coder or an appointment clerk.
- **Step 5**: As an alternative to her past relevant work, the ALJ concluded there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. AR 33.

Plaintiff asserts error with respect to the ALJ's determination of her residual functioning capacity ("RFC") and his determination of Plaintiff's credibility. Plaintiff does not seek review of the ALJ's rulings on steps 1, 2, or 3.

### a. The ALJ's Determination of RFC

Plaintiff argues that the ALJ erred in two ways when analyzing Plaintiff's RFC: 1) Plaintiff asserts that the record supports greater mental impairments than are captured in the ALJ's mental RFC finding (ECF 22 at 6); 2) Plaintiff argues that the ALJ was required to offer a detailed analysis of Plaintiff's limitations related to social functioning, concentration, persistence, or pace (ECF 22 at 11). The Court will address each in turn.

#### i. **The ALJ's mental RFC finding is supported by substantial evidence**.

In social security disability cases, "[t]he ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Generally, the opinion of a treating physician is entitled to more weight than the opinion of an examining physician, and more weight is given to the opinion of an examining physician than a non-examining physician. *Ghanim*, 763

F.3d at 1160. Where a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, it must be given controlling weight. 20 C.F.R. § 404.1527(c)(2).

The ALJ must provide clear and convincing reasons, supported by substantial evidence, for rejecting the uncontradicted opinion of treating physicians. *Ghanim*, 763 F.3d at 1160; *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (holding that ALJ can reject uncontradicted treating physician's opinion "by setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his own interpretation thereof, and making findings") (internal quotation marks and citation omitted). Where contradicted, the opinions of treating physicians may be rejected only for "specific and legitimate reasons that are supported by substantial evidence." *Ghanim*, 763 F.3d at 1160.

An ALJ need not accept a treating physician's opinion, however, if it is "brief, conclusory and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957. Similarly, an inconsistency between the treating physician's opinion and his own clinical findings provides a specific and legitimate reason to discount the physician's opinion. *See Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995) (ALJ gave clear and convincing reasons for rejecting treating physician's conclusion that the plaintiff was totally disabled where, among other things, the treating physician's total disability conclusion was contradicted his own contemporaneous finding that the plaintiff was only temporarily disabled)).

Here, Plaintiff points to records from Plaintiff's treating physicians, Plaintiff's subsequent stroke, and the Agency's psychological consultative examination conducted by Alex Kettner, Psy.D as support for a finding of greater impairments than the ALJ found. With regards to the treating physicians, the ALJ noted that there were no treating physician records after June 2014 and there was no treating physician opinion indicating that the Plaintiff is disabled or has limitations greater than those ultimately determined by the ALJ. AR 30-31. The ALJ did consider in detail the treating physician records that were available. While these records demonstrate that Plaintiff sought treatment for troubling symptoms, the records also reflect a general improvement and stabilization through treatment and medicine. AR 29-30; AR 261; AR 509; AR 314; AR 326;

AR 817. Furthermore, the ALJ found that Plaintiff's reports of frequency and level of severity were less than credible because Plaintiff acknowledged that during the treatment period, she sought employment as a maid and would have accepted a job offer. AR 30-31. While there may be more than one possible conclusion to draw from the treating physicians' records, the Court finds the conclusions drawn by the ALJ are supported by substantial evidence.

The ALJ also considered Plaintiff's stroke and incorporated Plaintiff's physical limitations into his RFC finding. AR 29, 31 (limiting left fingering and foot control). The ALJ noted that records after Plaintiff's stroke show that her depression was improving, her PTSD was stable, and her panic attacks were improving. AR 31. Plaintiff's major depressive disorder was also noted to be in remission. *Id*. (citing AR 1182). While Plaintiff points to select portions of Plaintiff's medical records that potentially contradict those portions of the records on which the ALJ relied (*see* ECF 22 at 8-9), the ALJ is responsible for determining credibility and resolving conflicts in the evidence. *Magallanes*, 881 F.2d at 750. Further, this Court must defer to the decision of the ALJ where evidence exists to support more than one rational interpretation. *Drouin*, 966 F.2d at 1258; *Bennett v. Colvin*, 202 F. Supp. 3d 1119, 1127 (N.D. Cal. 2016). Because the record amply supports the ALJ's conclusion, the Court finds the conclusions drawn by the ALJ are supported by substantial evidence.

Similarly, the ALJ did consider the Agency's consultative examination by Dr. Alex Kettner and accorded some portions of the opinion "some weight." AR 32. Plaintiff points to Dr. Kettner's conclusion that Plaintiff was markedly limited in her ability to withstand the stress of a routine workday and to maintain emotional stability/predictability. ECF 22 at 9. However, the ALJ explained that he accorded no weight to that portion of Dr. Kettner's opinion due to conflicting medical records and the testimony offered by Plaintiff at the hearing regarding her more recent work history. AR 32. The ALJ did accord some weight to Dr. Kettner's opinion where it notes that Plaintiff demonstrated "adequate attention and concentration," and "worked with an even pace and demonstrated adequate persistence." AR 32; AR 799. Dr. Kettner further concluded, as the ALJ noted, that Plaintiff should continue her current mental health treatment regimen and that that her "condition will likely improve over the next 12 months with appropriate

6

treatment." AR 32; AR 800. Dr. Kettner's evaluation demonstrates, at most, an inconsistency and possibility for more than one rational interpretation of the evidence. As such, the Court defers to the decision of the ALJ. *Bennett*, 202 F. Supp. 3d at 1127.

> ii. **The ALJ provided specific and legitimate reasons that are supported by substantial evidence for discrediting the severity of Plaintiff's limitations.**

Plaintiff contends that the ALJ did not properly evaluate how her mental impairments contribute to her moderate deficiencies of social functioning and concentration, persistence, or pace. ECF 22 at 5. Defendant argues that the ALJ's RFC is supported by substantial evidence because although the ALJ made a finding that Plaintiff suffered moderate difficulties with regard to social functioning, concentration, persistence, and pace, the ALJ took into consideration Plaintiff's improvements in concluding Plaintiff could perform unskilled work. ECF 27 at 12.

> 1. *The ALJ properly assessed the credibility of Plaintiff's claimed severity of her mental impairments.*

Plaintiff argues that the ALJ did not adequately consider Plaintiff's limitations of "social functioning and concentration, persistence, and pace," although Plaintiff does not specify which impairments cause these limitations. ECF 22 at 11. However, in support of her argument, Plaintiff cites to Dr. Kettner's conclusion that Plaintiff suffered marked limitations in her ability to withstand the stress of a routine work day and maintain emotional stability/predictability (AR 801). Dr. Kettner based this assessment on Plaintiff's "[d]epression [and] anxiety." AR 801.

Although the ALJ may not have used the specific phrasing of "social functioning and concentration, persistence, or pace" in explaining his RFC finding, the ALJ considered Plaintiff's mental impairments at length and offered a specific and legitimate explanation as to why he did not find the severity of these impairments credible. First, the ALJ explained why he accorded no weight to the above-referenced portion of Dr. Kettner's opinion. *See supra* § II.a.i. Second, the ALJ relied upon the expert opinion of Dr. Mohammad, a psychiatrist who testified as a medical expert. AR 32. Dr. Mohammad did not conclude that Plaintiff had limitations of concentration, persistence, and pace. Instead, he testified that he would have made such findings but for the facts that there were no mental health records after June 2014, Plaintiff had looked for employment,

7

and Plaintiff had in fact been recently employed. AR 32; 86-87. These facts changed Dr. Mohammad's opinion as to the severity of Plaintiff's impairments, and the ALJ accorded Dr. Mohammad's opinion great weight. AR 32.

Because the ALJ set forth valid reasons for finding that Plaintiff's symptom testimony was "not entirely credible," all supported by substantial evidence in the record, the Court finds that the ALJ properly evaluated the credibility of Plaintiff's subjective complaints.

### 2. *The ALJ properly incorporated medical evidence and testimony into his RFC analysis.*

Plaintiff also challenges the hypothetical offered by the ALJ to the vocational expert. Plaintiff argues that the ALJ improperly omitted limitations in Plaintiff's ability to perform simple tasks or activities when presenting his hypothetical to the vocational expert. ECF 22 at 12. In support of her argument, Plaintiff relies on *Moza v. Astrue*, No. CV 10-0678-TUC-BPV, 2012 U.S. Dist. LEXIS 71481 (D. Ariz. May 21, 2012) and *Brink v. Comm'r. of Soc. Sec. Admin.*, 343 Fed.Appx. 211 (9th Cir. 2009). *See* ECF 22 at 12-13. However, neither *Moza* nor *Brink* are analogous to the facts here and are therefore not applicable.

Both *Moza* and *Brink* look to the published Ninth Circuit decision *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008), in reversing an ALJ decision. *See Moza*, 2012 U.S. Dist. LEXIS 714871 at *14-15; *Brink*, 343 Fed.Appx. at 212. In *Stubbs-Danielson*, the Ninth Circuit held that "an ALJ's assessment of a claimant adequately captures restrictions related to social functioning, concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson*, 539 F.3d at 1173-74. In *Stubbs-Danielson*, the ALJ based his mental RFC finding on an assessment by a physician and a state agency psychologist. The physician's assessment noted claimant's good persistence, but slow pace in thought and action. The psychologist's assessment included a review of the physician's conclusions, and stated that Stubbs-Danielson could perform "simple work without public contact." *Id.* at 1171. The ALJ based his RFC finding on these assessments to conclude that the claimant could perform "simple, routine, repetitive sedentary work." The Court found the ALJ properly translated Stubbs-Danielson's limitations using the concrete restrictions described

8

by the state agency psychologist. *Id*. at 1173-74.

As explained by *Moza*, the court in *Brink* found that where the medical evidence is accepted by the ALJ and establishes difficulties with concentration, persistence, and pace, the ALJ must incorporate that finding in its RFC as presented to the vocational expert. *See Moza*, 2012 U.S. Dist. LEXIS 71481 at *15-16 (citing *Brink*, 343 Fed.Appx. at 212). *Moza* applied *Brink* to find that the ALJ improperly excluded limitations in his RFC where the ALJ accepted medical testimony and opinions from psychologists that established limitations in the claimant's concentration and persistence. *Id*. at 17.

Here, the ALJ did not accept the medical evidence that Plaintiff had limitations in social functioning, concentration, persistence, or pace that could have required a different hypothetical than the one presented by the ALJ. The record reflects that the ALJ based his hypothetical in relevant part on the expert opinion of Dr. Mohammad, a psychiatrist who testified as a medical expert. AR 96; 29-34. As discussed above, Dr. Mohammad changed his opinion as to the severity of Plaintiff's impairments as a result of the evidence at the hearing. AR 86-87. After an initial review of Plaintiff's records, Dr. Mohammad was prepared to testify that Plaintiff met the listing criteria, but changed his opinion after he learned that she was looking for a job, and was in fact employed. AR 86-87. After Dr. Mohammad offered his testimony, along with testimony from an internist, Dr. Amusa, the ALJ offered the following hypothetical the vocational expert:

> If we have an individual who is 50 to 54 years old, closely approaching advanced age, who has residual functional capacity for unskilled, medium work, seizure precautions, and no more than frequent fingering with the left hand, or foot controls with the left foot, are there any jobs customarily performed in the national economy which such a hypothetical person could perform?

AR 96-97. Accordingly, based on a review of the record, this Court concludes that the ALJ's RFC finding properly incorporated the limitations identified by Plaintiff's individual record, the medical testimony, and Plaintiff's testimony at the hearing. *See Stubbs-Danielson*, 539 F.3d at 1174.

Plaintiff also challenges the fact that in his written opinion, the ALJ made a finding of fact that Plaintiff suffered from limitations of social functioning, concentration, persistence, and pace,

9

1  but did not address these limitations in his RFC analysis. ECF 22 at 11-12. As discussed at length
2  above, the ALJ did consider the mental impairments that could have caused limitations of social
3  functioning, concentration, persistence, and pace, and offered specific and legitimate reasons for
4  discrediting Plaintiff's claims of severity of these limitations. AR 30. Therefore, the ALJ's
5  assessment of Plaintiff adequately captured restrictions related to social functioning,
6  concentration, persistence, or pace because the assessment is consistent with the restrictions
7  identified in the medical testimony. *See Stubbs-Danielson*, 539 F.3d at 1173-74.

### iii. Harmless Error

Even if this Court were to find that the ALJ improperly excluded certain impairments from the hypothetical presented to the vocational expert here, such error would be harmless. The jobs identified by the vocational expert do not require significant "social functioning, concentration, persistence or pace." In *Rosas v. Colvin*, the ALJ failed to consider Rosas's persistence and pace limitations in his RFC determination, and therefore provided an incomplete hypothetical to the vocational expert. *Rosas v. Colvin*, No. 15-CV-00231-WHO, 2015 WL 9455475, at *12 (N.D. Cal. Dec. 28, 2015). The court found that "[t]he vocational expert was [] unable to consider the full range of Lopez Rosas's limitations when she suggested that Lopez Rosas was capable of performing the jobs of 'hand packer,' 'grocery bagger,' and 'sandwich maker,' all of which may require 'repetitive, assembly-line work' that 'might well require extensive focus or speed' not contemplated by the hypothetical question." *Rosas*, 2015 WL 9455475, at *12. Where the jobs identified by the vocational expert required skills that implicate the claimant's impairments, omitting those impairments in the hypothetical was not harmless error.

Here, the impairments that the ALJ allegedly omitted in the hypothetical he presented to the vocational expert would not likely hinder Plaintiff's ability to perform the jobs identified by the vocational expert as they did in *Rosas*. The vocational expert recommended three jobs that the hypothetical person, as presented by the ALJ, could perform: a "counter supply worker," who the expert described as someone who replenishes buffet tables; a day worker, which the expert described as a housecleaner, and a packer of agriculture produce. AR 97. Unlike a job as a packer, which may require concentration, persistence, and pace, *see Rosas*, 2015 WL 9455475 at

10

*12, replenishing buffet tables would be unlikely to require sustained concentration, persistence, or pace. Furthermore, Plaintiff testified that she had looked for work as a housekeeper, a job identified by the vocational expert, and stated she would have taken a job if one had been offered. Thus, the Court finds that even if the ALJ did not properly analyze Plaintiff's RFC, any error was harmless because the jobs listed could be performed even with the additional impairments as argued by Plaintiff.

### b. The ALJ's credibility finding is supported by substantial evidence.

The ALJ found that Plaintiff's statements concerning the "intensity, persistence and limiting effects of [her] symptoms were not entirely credible for the reasons explained in [his] decision." AR 30. Plaintiff argues that the ALJ erred in his credibility assessment because he was required to consider Plaintiff's "exemplary work history," but did not. ECF 22 at 13-14.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Ghanim*, 763 F.3d at 1163 (internal quotation marks and citation omitted). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives specific, clear and convincing reasons for the rejection." *Id*. (internal quotation marks and citation omitted). General findings are insufficient; rather, "the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*, 278 F.3d at 958. Factors the ALJ may consider in making an adverse credibility determination include (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Id*. at 958-59.

The ALJ reasoning for discounting Plaintiff's testimony concerning her symptoms is supported by substantial evidence. The Court has been unable to find support in this Circuit for

11

Plaintiff's position that the ALJ is required to consider work history in making a credibility finding or that work history is a dispositive factor. Rather, work history is one of many factors the ALJ may consider. *Id*. Here, the ALJ considered medical records and expert testimony in determining that Plaintiff's statements as to intensity, persistence, and limiting effects of her impairments were "not fully credible." *See* AR 30. For example, with regards to Plaintiff's seizures, Plaintiff testified that the episodes were increasing. *See* AR 90. Yet, as the ALJ considered, Plaintiff's own reports in her medical records showed that with treatment, she reported a decrease in episodes. AR 31. Her EEG did not record any seizures, and in the most recent psychotherapy record, Plaintiff denied recent seizure-like episodes. *Id*. The ALJ performed similar analyses with regards to Plaintiff's other mental impairments. *Id*. As such, the Court finds the ALJ's credibility finding was supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the Court concludes that the ALJ applied the correct legal standards and that his findings are supported by substantial evidence.

**SO ORDERED.**

Dated: 9/14/2017

SUSAN VAN KEULEN
United States Magistrate Judge